# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MONA FERN TITTLE,**

    Plaintiff,

    v.                                  Case No. 05-C-435

**GEORGE WEBB RESTAURANT
(in Butler, WI c/o Dianne Neavins),**

**RONI J. KNUTSON-ZINNER,**

**OFFICER RAHN,**

**CHIEF MICHAEL OLSON,**

    Defendants.

## ORDER ON MOTION TO PROCEED IN FORMA PAUPERIS

    Mona Fern Tittle ("Tittle"), proceeding pro se, filed a complaint against the defendants and a petition to proceed in forma pauperis. Before the court can allow the plaintiff to proceed in forma pauperis, the court is obligated to determine that Tittle is unable to pay the $250.00 filing fee and that her case (1) is not frivolous or malicious, (2) does not fail to state a claim upon which relief may be granted, and (3) does not seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

    A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may,

therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. A complaint should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

In Tittle's petition to proceed in forma pauperis, which contains private information under the E-Government Act of 2002, Tittle alleges sufficient liabilities and income to satisfy the court that she is indigent. Thus, the court will turn to the merits of Tittle's claims against the defendants.

## FACTUAL ALLEGATIONS AND CAUSES OF ACTION ASSERTED

Tittle, who is black, alleges that she and three black companions visited the George Webb restaurant that is listed as a defendant in this case ("the Restaurant"). After waiting to be seated for approximately fifteen to twenty minutes, Tittle says that her party moved dirty dishes to a vacant table and seated themselves. Defendant Roni J. Knutson-Zinner ("Knutson-Zinner") observed this and asked Tittle's party to leave the Restaurant, stating that they should not have moved the dirty dishes and seated themselves. Tittle and her companions refused, and Knutson-Zinner summoned Officer Rahn of the Butler Police Department to the Restaurant for assistance. Upon arrival, Officer Rahn requested that Tittle's party comply with Knutson-Zinner's request to leave and advised Tittle that she could file a complaint with the Butler Police Department regarding Knutson-Zinner's actions if she

wished to do so. While Officer Rahn discussed the dispute, white customers entered the restaurant, moved dishes to a vacant table, and seated themselves. Knutson-Zinner did not request that the white customers leave. Tittle claims this difference in treatment between her group and the white customers demonstrates that Knutson-Zinner was racially motivated. In addition, Tittle takes issue with the actions of Officer Rahn. According to Tittle, Officer Rahn should not have requested her party to leave the Restaurant, initially refused to interview customers about the incident, stated that he did not care about civil and constitutional rights, refused to disclose the names of the customers he eventually interviewed, did not take statements about the incident, and later ordered one of Tittle's companions out of the police station.

Tittle further states that her companions returned to the police station and spoke with Butler Police Chief Michael Olson ("Chief Olson") regarding Officer Rahn and the incident at the Restaurant. Chief Olson expressed his belief that no constitutional or civil rights violation occurred and declined to investigate the matter further.

Based on the foregoing, Tittle asserts that the defendants violated (1) the Wisconsin Public Accommodation and Amusement Act; (2) the Due Process Clause; (3) the Equal Protection Clause; and (4) the Eighth Amendment. As for her relief, Tittle seeks five million dollars from each defendant and an additional five million dollars in punitive damages. In addition, Tittle states that she intends to sue the defendants in their "personal as well as professional capacity."

## ANALYSIS

### I. WPAAA Claim against Knutson-Zinner and the Restaurant

Under the Wisconsin Public Accommodation and Amusement Act ("WPAAA"), no person may "[g]ive preferential treatment to some classes of persons in providing services or facilities in any

3

public place of accommodation or amusement because of sex, race, color, creed, sexual orientation, national origin or ancestry." Wis. Stat. § 106.52(3)2. This cause of action does not apply to Officer Rahn and Chief Olson because they do not fall within the definition of those persons who provide services at a public place of accommodation or amusement. However, if Knutson-Zinner refused to serve Tittle and her companions because of they are black, as Tittle asserts, then Tittle has stated a claim for which relief may be granted under the WPAA. In addition, the court finds Tittle's claim to be neither frivolous or malicious. Thus, as to the defendants Knutson-Zinner and the Restaurant, Tittle's claim satisfies the requirements of § 1915(e)(2), and the application to proceed in forma pauperis will be granted.

## II. Claims against Officer Rahn and Chief Olson

Because no federal cause of action exists for a violation of constitutional rights by private parties, Tittle's Eighth Amendment, Due Process, and Equal Protection claims will be analyzed with respect to Officer Rahn and Chief Olson only. A federal claim against Officer Rahn and Chief Olson may be pursued under 42 U.S.C. § 1983. Under that section, "any person who, under color of state law, deprives another person of a right, privilege, or immunity secured by the United States Constitution is subject to personal liability for the deprivation."

In the present case, Tittle seeks a substantial monetary award against the defendants. Her ability to collect money damages from Officer Rahn and Chief Olson is limited by the doctrine of qualified immunity. Qualified immunity is intended to protect police officers from undue interference with their duties and from potentially disabling threats of liability. Thus, when public officials perform discretionary functions they are immune from suit for money damages unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have

4

known." Jenkins v. Keating, 147 F.3d 577, 584 (7th Cir. 1998)(citing Tangwall v. Stuckey, 135 F.3d 510, 514 (7th Cir.1998)). Broken into elements, qualified immunity will preclude Tittle's claims if:

(1) the federal law that Officer Kahn and Chief Olson are asserted to have breached was not clearly established at the time of the alleged violation or

(2) there exists no genuine dispute of material fact that would prevent a finding that the police action, with respect to clearly established law, were objectively reasonable.

Jenkins v. Keating, 147 F.3d 577, 585 (7th Cir. 1998); Wollin v. Gondert, 192 F.3d 616, 621 (7th Cir. 1999). Pursuant to the final requirement of the in forma pauperis statute, the court will consider the additional standards required to satisfy the qualified immunity in assessing Tittle's application. Section 1915(e)(2)(B)(iii).

**A. Eighth Amendment Claim**

Tittle's first claim is that her Eighth Amendment right to be free of cruel and unusual punishment was violated. However, the power to punish described in the Eighth Amendment exists only after the state has secured a formal adjudication of guilt. Palmer v. Marion County, 327 F.3d 588, 593 (7th Cir. 2003)(citing Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977) and Bell v. Wolfish, 441 U.S. 520, 535 (1979)); Tesch v. County of Green Lake, 157 F.3d 465, 473 (7th Cir. 1998). Tittle is not a convicted prisoner, protected by the Eighth Amendment. Thus, as to her Eighth Amendment claim, Tittle has not stated a claim upon which relief may be granted, and her claim "lacks arguable basis in either law or in fact." The requirements of § 1915(e)(2) are not satisfied, and the application to proceed in forma pauperis will be denied with respect to this claim.

**B. Equal Protection Claim**

The Equal Protection Clause grants "the right to be free from invidious discrimination in statutory classifications and other governmental activity." Harris v. McRae, 448 U.S. 297, 322 (1980).

5

To establish liability under § 1983 based on a violation of equal protection, Tittle must show that the defendants acted with a "nefarious discriminatory purpose" and discriminated against her based on her membership in a definable class. Nabozny v. Podlesny, 92 F.3d 446, 453-54 (7th Cir. 1996)(internal citations omitted); Indianapolis Minority Contractors Ass'n, Inc. v. Wiley, 187 F.3d 743, 752 (7th Cir. 1999). As explained in Shango v. Jurich, 681 F.2d 1091 (7th Cir.1982):

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

Id. (citing Shango, 681 F.2d at 1104). A showing that the defendants were negligent will not suffice. Rather, Tittle must show that the defendants acted either intentionally or with deliberate indifference. Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir.1988); Jackson v. City of Joliet, 715 F.2d 1200, 1203 (7th Cir.1983); Shango, 681 F.2d at 1104.

Tittle alleges that Chief Olson did not investigate her complaints because he believed no civil or constitutional violation had occurred. There is no allegation that Chief Olson's opinion was racially motivated or evidence that his actions demonstrate the specific degree of intent is described as a "nefarious discriminatory purpose." Chief Olson did not assist in Tittle's removal from the Restaurant and was not party to her subsequent dealings with Officer Rahn. He had an after-the-fact discussion about the incident that was initiated by Tittle herself. Under the circumstances alleged, Chief Olson is too far removed from the alleged discrimination to face liability on Equal Protection Clause grounds and in light of the qualified immunity protections. Thus, as to Chief Olson, Tittle's Equal Protection claim fails to satisfy § 1915(e)(2) and will be dismissed.

At this preliminary stage in the proceedings, the same cannot be said with regard to Officer Rahn. There are circumstances that might differentiate Tittle and her party from the white customers, such that it would have been reasonable for Officer Rahn to remove Tittle's party from the Restaurant. In fact, Knutson-Zinner summoned Officer Rahn because of Tittle's actions and, according to the police report authored by Officer Rahn, Tittle and her party appeared to be drunk and disruptive. However, Officer Rahn's report also indicates that he observed white customers move dishes and seat themselves at the Restaurant. In light of that observation, and based on the reason given for removal that Knutson-Zinner expressed, Officer Rahn reports that he thought it "odd" that Knutson-Zinner would want Tittle's party to leave. In determining whether Tittle can proceed with her claims at this early stage in the proceedings, Officer Rahn's observation of the white customers and characterization of Knutson-Zinner's request as "odd" preclude the court from finding that there is no chance that Officer Rahn violated equal protection. If Officer Rahn noted Tittle's drunkenness but still believed that her removal was racially motivated, assisting Knutson-Zinner might constitute deliberate indifference for Tittle's rights. Similarly, if Officer Rahn assisted Knutson-Zinner in removing Tittle's party knowing that their removal was racially motivated, the doctrine of qualified immunity does not preclude personal liability for money damages. Accordingly, with respect to the Equal Protection Clause claim against Officer Rahn, Tittle has satisfied the requirements of § 1915(e)(2) and the application to proceed in forma pauperis will be granted.

**C. Due Process Claim**

Tittle's final claim asserts a violation of due process. There are two types of due process: procedural due process and substantive due process. The key to procedural due process is that an injured party has "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

7

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Accordingly, procedural due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances;" instead, it "is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334 (citations omitted). A court considering what process is due must weigh three factors: (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such an interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. Baird v. Bd. of Educ. for Warren Cmty. Unit School Dist. No. 205, 389 F.3d 685, 690 (7th Cir. 2004).

The allegations in the present case do not amount to a potential violation of Tittle's right to procedural due process. While Tittle may have disagreed with Knutson-Zinner's actions and the way that Officer Rahn handled the Restaurant dispute, Tittle was able to raise her concerns to Chief Olson. She also filed a complaint against the Restaurant with the Department of Workforce Development. (See Compl. Attach. DeLao Ltr., Apr. 1, 2005.). Considering Tittle's allegations, this provides a meaningful opportunity to be heard and is precisely what procedural due process requires. Moreover, even assuming that more substantial process was required, any deficiency is far from the type that would be considered "clearly established" on these facts. Thus, qualified immunity precludes Officer Rahn's and Chief Olson's liability, Tittle ha not stated a viable cause of action, and the application to proceed in forma pauperis will be denied as to this claim.

The same is true with regard to substantive due process. Substantive due process protects against the exercise of arbitrary and oppressive government power. County of Sacramento v. Lewis,

8

523 U.S. 833, 845 (1998). A violation of substantive due process is recognized only for "the most egregious official conduct [that] can be said to be 'arbitrary in the constitutional sense.'" Id. at 846 (citing Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). For an abuse of executive power to reach a level that qualifies as a substantive due process violation, it must be such an abuse of power that "shocks the conscience." Id. Further, the County of Sacramento court cautioned that the "shock the conscience" standard is not one that will supplant traditional common law, and the substantive due process guarantee will not become a body of constitutional law that imposes liability "whenever someone cloaked with state authority causes harm." Id. at 848. The alleged actions of Officer Rahn and Chief Olson are not the select kind of that "shock the conscience," in violation of substantive due process. With respect to this claim, the application to proceed in forma pauperis will be denied.

For all of the reasons discussed, the court now enters the following orders on Tittle's application to proceed in forma pauperis:

**IT IS THEREFORE ORDERED** that the application to proceed in forma pauperis is **granted in part** and **denied in part**, as follows:

1. The motion is granted with respect to Tittle's Wisconsin Public Accommodation and Amusement Act claim against (1) Roni J. Knutson-Zinner and (2) the George Webb Restaurant.

2. The motion is granted with respect to Tittle's § 1983 claim for a violation equal protection against Butler Police Officer Rahn.

3. The motion is denied in all other respects, and Butler Police Chief Michael Olson is dismissed from this case, as none of Tittle's claims against him remain.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 4(c)(2), the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the

9

summons, and this order upon defendants. Even though the plaintiff has been permitted to proceed in forma pauperis in this case, the plaintiff is still responsible for the cost of serving the complaint on the defendants. The plaintiff is advised that Congress requires the Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided in Revision to United States Marshals Service Fees for Services. 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived, either by the court or by the Marshals Service.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge

10